FILED

10/28/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 25-0515

OP 25-0515

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 246

GAIGE ALEXANDER CAYE,

        Petitioner,

  v.

MONTANA TWENTIETH JUDICIAL
DISTRICT COURT, LAKE COUNTY,
THE HONORABLE MOLLY OWEN,
Presiding,

        Respondent.

ORIGINAL PROCEEDING:    Petition for Writ of Supervisory Control
                               In and For the County of Lake, Cause No. DC-24-128
                               Honorable Molly Owen, Presiding Judge

COUNSEL OF RECORD:

        For Petitioner:

                Toby Cook, Snyder, Beaudry & Cook PC, Bigfork, Montana

        For Respondent:

                Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
                Attorney General, Helena, Montana

                               Decided:  October 28, 2025

Filed:

                                   _____
                                         Clerk

Justice Katherine Bidegaray delivered the Opinion and Order of the Court.

¶1 Petitioner Gaige Alexander Caye, via counsel, seeks a writ of supervisory control over the Twentieth Judicial District Court, Lake County, Cause No. DC-24-128, in which Caye is the defendant in a criminal matter. Caye alleges the District Court erred by denying his motion to substitute judge where he made the motion after he was arraigned on an Amended Information that added charges to the initial Information. At our invitation, the State of Montana has responded to Caye's petition. Caye's petition raises the following issues:

1. *Is this matter appropriate for a writ of supervisory control?*

2. *Did the District Court err when it denied Caye's motion to substitute judge as untimely when Caye filed the motion within 10 days of his arraignment on an Amended Information that added new charges to his criminal case?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On July 12, 2024, Caye was charged via Information with one felony count each of assault with a weapon, unlawful possession of firearm by convicted person, and tampering with or fabricating physical evidence, all relating to an incident that allegedly occurred on or about July 8, 2024. The case was assigned to Hon. Molly Owen, who arraigned Caye on July 24, 2024. Caye did not move to substitute Judge Owen at that time.

¶3 On June 9, 2025, the State filed an Amended Information, adding three felony counts of criminal distribution of dangerous drugs. The State alleged Caye distributed fentanyl to two people on or about July 8, 2024, and to a third person on or about July 13, 2024.

2

¶4 Judge Owen arraigned Caye on the Amended Information on June 18, 2025. On June 20, 2025, Caye moved to substitute Judge Owen from the case pursuant to § 3-1-804(1), MCA. He alleged the motion was timely filed under § 3-1-804(1)(b), MCA, because it was filed within 10 calendar days of his arraignment on the Amended Information.

¶5 Judge Owen denied Caye's motion, concluding it was untimely because Caye did not file it within 10 calendar days of the July 24, 2024 arraignment. She determined § 3-1-804(1), MCA, only allows for timely substitution within 10 calendar days of a defendant's initial arraignment. Judge Owen reasoned that allowing substitution within 10 days of an arraignment on an amended information would lead to absurd results because the State could file an amended information as a means to circumvent the time limit or, since § 46-11-205(1), MCA, allows the State to file an amended information until five days before a trial, a defendant could substitute a judge on the eve of trial.

¶6 Caye challenges the denial of his motion for substitution via this petition for writ of supervisory control.

**STANDARD OF REVIEW**

¶7 Supervisory control is an extraordinary remedy that may be invoked when the case involves purely legal questions and urgent or emergency factors make the normal appeal process inadequate. M. R. App. P. 14(3). The case must meet one of three additional criteria: (a) the other court is proceeding under a mistake of law and is causing a gross injustice; (b) constitutional issues of state-wide importance are involved; or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case.

3

M. R. App. P. 14(3)(a)-(c).  The petitioner bears the burden of convincing this Court to issue a writ.  *Innovative Contr., LLC v. Mont. Twentieth Jud. Dist. Ct.*, No. OP 23-0153, 411 Mont. 393 (Mar. 9, 2023).

¶8     A district court's determination of whether to substitute is a question of law that we review for correctness.  *City of Missoula v. Mt. Water Co.*, 2021 MT 122, ¶ 8, 404 Mont. 186, 487 P.3d 15.

## DISCUSSION

¶9     *1.  Is this matter appropriate for a writ of supervisory control?*

¶10     Caye's petition for supervisory control is premised upon his right to have a different judge preside over his criminal matter, which makes the normal appeal process inadequate. *Collins v. Mont. Eighth Jud. Dist. Ct.*, 2015 MT 125, ¶ 5, 391 Mont. 378, 418 P.3d 672. Whether a motion for substitution is timely presents a question of law.  *Mattson v. Mont. Power Co.*, 2002 MT 113, ¶ 7, 309 Mont. 506, 48 P.3d 34.  This issue of law regarding the threshold matter of whether a judge has authority to proceed with a case requires the construction of a rule of this Court. Thus, the legal issue should be resolved by this Court. *Cushman v. Mont. Twentieth Jud. Dist. Ct.*, 2015 MT 311, ¶ 3, 381 Mont. 324, 360 P.3d 492.

¶11     We therefore conclude that, pursuant to this Court's authority to issue, hear and determine writs found in Article VII, Section 2, of the Montana Constitution, and our discretionary authority to accept or reject writs of supervisory control under M. R. App. P. 14(3), it is appropriate to consider this petition for writ of supervisory control. Furthermore, in cases in which a motion for substitution has been timely filed, the

4

substituted judge does not have the power to act on the merits of the case or to decide legal issues in the case, barring some exceptions not applicable here. Section 3-1-804(5), MCA. Thus, if the denial of Caye's motion to substitute is erroneous, any subsequent actions of the District Court in this case are void as lacking jurisdiction.

¶12    *2. Did the District Court err when it denied Caye's motion to substitute judge as untimely when Caye filed the motion within 10 days of his arraignment on an Amended Information that added new charges to his criminal case?*

¶13    Having determined this matter may be susceptible to a writ of supervisory control, we next consider whether the District Court erred when it denied Caye's motion to substitute on the basis of untimeliness.

¶14    Although codified, § 3-1-804, MCA, is a court-adopted rule. *Cushman*, ¶ 3. Section 3-1-804, MCA, is included within the Montana Code Annotated because publication of this, and other, rules of this Court within the MCA is for the benefit of code users and is not "a legislative attempt to readopt or promulgate the rule." Title 3, chapter 1, part 8, MCA, *Effect of Publication*, Part Compiler's Comments (2023); 1979 Mont. Laws ch. 1, § 2. It governs procedure and practice before the courts that fall within this Court's authority pursuant to Article VII, Section 2(3), of the Montana Constitution.[1] The rule

---

[1] *Patrick v. State*, 2011 MT 169, ¶ 22, 361 Mont. 204, 257 P.3d 365, explains the history of judicial substitution in Montana. The right of a party to automatically obtain judicial substitution first became law via the "Fair Trial Bill," Laws of Montana 1903, Second Extraordinary Session, Ch. 3, § 1(4). *Patrick*, ¶ 23 n.5, summarizes the subsequent developments of the rule:
>  The "Fair Trial Bill" was subsequently codified in R.C.M. 1947, § 93-901. R.C.M. 1947, § 93-901 was superseded by order of this Court and codified as § 3-1-801, MCA. *In re Rules of the Supreme Court*, 34 State Rep. 26, 27 (1976). Section 3-1-801, MCA, was subsequently superseded by order of this Court and codified in § 3-1-802, MCA. *In re Rules of the Supreme Court*, 194 Mont. 8, 10-11 (1981). Finally, § 3-1-802, MCA, was superseded by order of this Court, and the right to judicial substitution was codified in § 3-1-804, MCA, where it continues to reside

seeks to promote judicial economy and expediency by demanding the prompt substitution of a district court judge when a party requests such removal. *Mattson*, ¶ 20. Section 3-1-804, MCA, confers the right to an automatic substitution of a district court judge for any reason, but this right is not of constitutional dimension. *Swan v. State*, 2006 MT 39, ¶ 24, 331 Mont. 188, 130 P.3d 606.

¶15 Under § 3-1-804(1), MCA, each adverse party is entitled to one substitution of a district judge. In this case, Caye did not previously exercise his right to substitution and therefore he would not be precluded from substituting Judge Owen on that basis. However, § 3-1-804(1)(b), MCA, further provides that in a criminal action, a motion for substitution must be filed within 10 calendar days after the defendant's arraignment. In this case, Caye argues he was entitled to substitute Judge Owen within 10 days of his June 18, 2025 arraignment on the Amended Information because the time limits, which begin to run "after the defendant's arraignment," are not limited to an initial arraignment. Caye asserts the State's Amended Information "significantly expanded the case . . . introducing an entirely new theory of prosecution" and it is reasonable to allow him to exercise his right to substitution in these circumstances. Although, in denying Caye's substitution motion, the District Court theorized ways in which the State or a defendant might "game" a last-minute substitution on an Amended Information, Caye suggests that if defendants cannot exercise the right to substitution when new charges are added to an existing Information, prosecutors may "game" the case by holding back certain charges until the time for

---

today. *In the Matter of the Rules on the Disqualification and Substitution of Judges*, 227 Mont. 31, 31-33 (1987).

substitution expires after the initial arraignment. Caye asserts § 3-1-804(1)(b), MCA, is unambiguous and nothing within its text limits the right to substitution to the initial arraignment. He argues this Court would add a limitation that does not exist in the rule if it concludes defendants who have not yet exercised their right to substitution cannot do so if the defendant is arraigned on an Amended Information that adds new charges.

¶16 The State argues § 3-1-804(1)(b), MCA, does not contemplate that the right to substitution is renewed each time a defendant is arraigned. The State maintains that § 3-1-804(1)(b), MCA, applies only to the first arraignment, "a singular and definitive event," because the rule refers to "the" arraignment—not to "an" or "any" arraignment. The State also urges this Court to take the evolution of the rule into account in interpreting the current version. The State points out that the previous iterations of the rule "always contemplated the [motion for substitution] deadline to be near-in-time to the filing of the initial criminal charges." From October 1, 2009, until July 1, 2015, § 3-1-804(1)(b), MCA, provided, in relevant part, that the 10-day substitution window began running for the State or the prosecution within 10 calendar days after the district judge is assigned and for the defense within 10 calendar days after the defendant made an initial appearance. Prior to then, the 10-day substitution window in a criminal matter began running from the day of service of an Information. Noting that it is sometimes difficult to determine whether a particular hearing constitutes an "initial appearance," the State theorizes we may have changed the time to run from arraignment instead of initial appearance to make the filing deadline for a substitution motion more definitive.

¶17     That revision to § 3-1-804(1)(b), MCA, came about after the Montana Judges Association (MJA) petitioned this Court to revise § 3-1-804, MCA, asserting that litigants were abusing the substitution rule. Petition for Revision of Judge Substitution Rule to Remedy Abuse, *In re Revised Rules on Substitution of District Judges*, No. AF 09-0289 (Mont. Supreme Ct. Feb. 10, 2014). The revision to § 3-1-804(1)(b), MCA, that changed the triggering event for the 10-day deadline to request substitution from "initial appearance" to "arraignment" was one of several revisions the MJA requested. Although the MJA explained its rationale for many of its requested revisions, it did not explain this specific request. And, although the MJA's petition garnered extensive public comments, this particular requested revision was not the focus of those comments. Thus, our review of the rule's evolution provides no insight beyond the State's observation that, although the triggering event changed, the rule always provided that substitution occur near-in-time to the filing of the initial criminal charges.

¶18     In applying the substitution rule in a civil context, we have held that parties that appear later in litigation are not entitled to substitution because of the potential disruption and delay it may cause. In *Mattson*, we were asked whether a joined party was precluded from substituting a district court judge under § 3-1-804(1)(c), MCA, if the time period for the original parties to substitute had expired. *Mattson*, ¶ 3. We concluded that subsequently joined parties and intervenors were not entitled to substitution without cause after the time for the original parties to do so had expired. *Mattson*, ¶ 15. We rejected the argument that this limitation violated the substantive due process rights of the subsequently joined party because we found a rational basis for doing so, and further, that "responsible

8

judicial administration requires doing so." *Mattson*, ¶ 21. We reasoned that, during the time period for substitution afforded the original parties to the litigation, the judge had presided over the case for a short time and had likely not issued substantial rulings. *Mattson*, ¶ 22. Conversely, subsequently joined parties or intervenors appear at later stages of litigation and, "[t]o allow a joined or substituted defendant to remove the presiding judge, without cause, after the judge has presided over the case for what could be a substantial period would disrupt the continuity of the litigation, precipitate delay, cause duplication of effort, and waste time and expense." *Mattson*, ¶ 23. Our reasoning in *Mattson* supports the State's position here: the right to substitution is intended to be exercised at or near the beginning of litigation because the benefit that may accrue to a party for later substitution is outweighed by the potential judicial inefficiency, wasted time, and expense.

¶19 Both Caye and the State note this Court confronted the timeliness of a substitution motion after an Amended Information is filed in *Warner v. Mont. Eleventh Jud. Dist. Ct.*, No. OP 17-0628, 390 Mont. 425, 410 P.3d 177 (Nov. 7, 2017). Warner, a self-represented litigant, petitioned this Court for a writ of supervisory control after the District Court denied a substitution motion as untimely. In his petition, Warner argued he was entitled to exercise the right to substitution because he filed his motion within 10 days after the State filed an Amended Information that added a second count to Warner's criminal case. We denied Warner's petition, holding that the filing of an Amended Information "did not start the [substitution] process anew." Caye argues *Warner* does not control because it did not reach the issue of whether a new arraignment resets the substitution period; *Warner* only held

that the filing of an Amended Information does not reset the substitution period. While noting that in *Warner* this Court did not allow a criminal defendant to reset the time for moving for substitution, the State acknowledges we did not consider whether an arraignment, rather than the filing of an Amended Information, would have done so, presumably because Warner did not argue it. However, our review of *Warner's* petition and exhibits reveals that Warner advised us he had been arraigned on the Amended Information and the Order and Rationale on Motion for Substitution of District Court Judge reveals that the district court ruled that neither the filing of an Amended Information *nor the subsequent arraignment* reinstated Warner's right to substitution. Although we chose only to narrowly address the argument Warner raised, we note that, in effect, we denied the right to substitute in that case when the same relevant procedural facts were present as here.

¶20 Citing *Collins*, ¶ 6 n.1, the State maintains the initial arraignment is the "definitive triggering event" for the right to substitution. In *Collins*, we granted supervisory control and held that a district court improperly denied a criminal defendant's substitution motion where the defendant failed to appear at his scheduled arraignment but moved for substitution within 10 days of the date he personally appeared. Although the district court had concluded Collins' arraignment occurred on the initially scheduled date where Collins failed to appear, we concluded the "arraignment" did not occur until Collins' personal appearance. We explained:

> Section 46-1-202(2), MCA, defines an arraignment as "the formal act of calling the defendant into open court to enter a plea answering a charge." An arraignment "must be conducted in open court and must consist of reading

10

the charge to the defendant or stating to the defendant the substance of the charge and calling on the defendant to plead to the charge." Section 46-12-201(1), MCA. Further, the "defendant must be given a copy of the charging document before being called upon to plead." Section 46-12-201(1), MCA.

*Collins*, ¶ 6. We further stated:

> [A]n "arraignment" starting the ten-day substitution timeline of § 3-1-804(1)(b), MCA, must comply with the requirements of Title 46, MCA. The District Court reads § 3-1-804(1)(b), MCA, as simply setting "a definitive moment in the criminal proceeding to trigger the ten-day timeline in which to file a motion for substitution of judge." We agree with the District Court that § 3-1-804(1)(b), MCA, sets a "definitive moment" triggering the ten-day timeline, but find that "definitive moment" to be when the defendant is arraigned pursuant to the standard procedure required in all criminal proceedings.

*Collins*, ¶ 6 n.1. In the present case, under the same statutory definitions we relied upon in *Collins*, Caye was arraigned on July 24, 2024, and again on June 18, 2025.

¶21 It is undisputed that Caye's July 24, 2024 arraignment triggered his right to substitution. We do not agree with Caye that, if a defendant is subsequently arraigned on an Amended Information and has not previously exercised his right to substitution, the subsequent arraignment again triggers the 10-day opportunity to request substitution. We are cognizant of the concerns raised by the State, Caye, and the District Court as to ways in which a party's exercise of the right to substitution may cause delay or inefficiency in a criminal case. Indeed, this Court has recognized that fashioning a substitution rule, "while balancing all potential interests[,] is not an easy task." *Mattson*, ¶ 25. On balancing these interests in the present circumstances, we conclude that § 3-1-804, MCA, allows a defendant to exercise the right to substitution after the initial arraignment. We therefore

11

conclude the District Court did not err when it denied Caye's motion for substitution as untimely.

## CONCLUSION

¶22    This Petition for a Writ of Supervisory Control is DENIED.

¶23    This matter is REMANDED to the District Court for further proceedings consistent with this Opinion and Order.

The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter and in Twentieth Judicial District Court Cause No. DC-24-128, and to the Honorable Molly Owen, presiding District Judge.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE