FILED

01/06/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 25-0741

OP 25-0741

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 1

S.L.,

      Petitioner,

    v.

MONTANA FOURTH JUDICIAL
DISTRICT COURT, MISSOULA COUNTY,
THE HONORABLE JOHN W. LARSON,
Presiding,

      Respondent.

ORIGINAL PROCEEDING:     Petition for Writ of Supervisory Control
                             In and for the County of Missoula, Cause No. DC-25-544
                             Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Petitioner:

            Alexander H. Pyle, Assistant Public Defender, Lewistown, Montana

      For Respondent:

            Austin Knudsen, Montana Attorney General, Michael Dougherty, Assistant Attorney General, Helena, Montana

            Hon. John W. Larson, District Judge, Missoula, Montana

                             Decided:  January 6, 2026

Filed:

                        _____
                                  Clerk

Justice Katherine Bidegaray delivered the Opinion and Order of the Court.

¶1 Petitioner S.L., via counsel, seeks a writ of supervisory control over the Fourth Judicial District Court, Missoula County, Cause No. DC-25-544, in which S.L. is the defendant in a criminal matter. S.L. alleges the court erred in denying her motion to substitute judge pursuant to § 3-1-804, MCA. Pursuant to S.L.'s request, we stayed the District Court matter pending the resolution of this petition. The State of Montana and Hon. John W. Larson, presiding Judge, have each responded in opposition to S.L.'s petition. With leave of Court, S.L. further filed a reply brief addressing arguments raised by the State in its response.

¶2 On September 30, 2025, with leave of court, the State filed an Information charging S.L., age 16, with aggravated burglary, assault on a peace officer, resisting arrest, and attempted possession of intoxicating substances while under age 21. S.L. appeared before the District Court on October 2, 2025. The court did not arraign S.L. at that hearing. Pursuant to § 41-5-206(3), MCA, the court set a hearing for November 3, 2025, to determine whether the matter should remain in District Court or be transferred to Youth Court. The court further advised the parties, "There will be an evaluation done prior to this transfer hearing to determine, again, what is in the interest of community safety, as well as the best interest of the Youth concerning the availability of Youth Court or other programs." The court orally ordered "an evaluation on the transfer issue."

¶3 The District Court issued a written Order for Evaluation on October 2, 2025. However, the order was inadvertently filed under the wrong cause number.

2

¶4 On October 8, 2025, S.L. moved to substitute the District Court judge under § 3-1-804(1)(b), MCA. S.L. alleged in her motion that it was timely filed because she had not yet been arraigned.

¶5 On October 9, 2025, the Order for Evaluation was filed in Cause No. DC-25-544.

¶6 On October 14, 2025, the District Court issued an Order Denying Motion to Substitute Judge Without Prejudice. Noting that § 3-1-804(1)(c), MCA, prohibits substitution motions in youth court actions, the court stated it was denying S.L.'s motion without prejudice but would grant substitution if the case remained in the District Court after the transfer hearing.

¶7 S.L. then petitioned this Court for writ of supervisory control, alleging the District Court had no authority to deny her substitution motion because the case is not currently a Youth Court case and further arguing the Court's Order for Evaluation is void because the court had no authority to issue it once a valid motion to substitute was filed.

¶8 Supervisory control is an extraordinary remedy that may be invoked when the case involves purely legal questions and urgent or emergency factors make the normal appeal process inadequate. M. R. App. P. 14(3). The case must meet one of three additional criteria: (a) the other court is proceeding under a mistake of law and is causing a gross injustice; (b) constitutional issues of state-wide importance are involved; or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case. M. R. App. P. 14(3)(a)-(c). The petitioner bears the burden of convincing this Court to issue a

writ. *Innovative Contr., LLC v. Mont. Twentieth Jud. Dist. Ct.*, No. OP 23-0153, 411 Mont. 393 (Mar. 9, 2023).

¶9     S.L.'s petition for supervisory control is premised upon her right to have a different judge preside over her criminal matter, which makes the normal appeal process inadequate. *Collins v. Mont. Eighth Jud. Dist. Ct.*, 2015 MT 125, ¶ 5, 391 Mont. 378, 418 P.3d 672. Whether a motion for substitution is timely presents a question of law. *Mattson v. Mont. Power Co.*, 2002 MT 113, ¶ 7, 309 Mont. 506, 48 P.3d 34. This issue of law, regarding the threshold matter of whether a judge has authority to proceed with a case, requires the construction of a rule of this Court. Thus, the legal issue should be resolved by this Court. *Cushman v. Mont. Twentieth Jud. Dist. Ct.*, 2015 MT 311, ¶ 3, 381 Mont. 324, 360 P.3d 492.

¶10    We therefore conclude that, pursuant to this Court's authority to issue, hear, and determine writs found in Article VII, Section 2, of the Montana Constitution, and our discretionary authority to accept or reject writs of supervisory control under M. R. App. P. 14(3), it is appropriate to consider this petition for writ of supervisory control. Furthermore, in cases in which a substitution motion has been timely filed, the substituted judge does not have the power to act on the merits of the case or to decide legal issues in the case, barring some exceptions not applicable here. Section 3-1-804(5), MCA. Thus, if the denial of S.L.'s motion to substitute is erroneous, any subsequent actions of the District Court in this case are void as lacking jurisdiction.

¶11 At issue is whether the District Court was required to grant S.L.'s substitution motion at the time she filed it. Section 3-1-804(1), MCA, entitles every adverse party to one substitution of a district court judge. This includes criminal matters. Section 3-1-804(1)(b), MCA. However, substitution is prohibited in Youth Court actions. Section 3-1-804(1)(c), MCA. S.L. argues this matter is a criminal action because the State charged her as an adult in district court. The District Court disagrees, asserting this is a youth court action proceeding under Title 41, chapter 5, MCA. The court asserts that its jurisdiction in this case lies in § 41-5-206, MCA, within the Youth Court Act. The court maintains this matter does not become a criminal matter until and unless the matter is not transferred to Youth Court following the transfer hearing.

¶12 Although the District Court considers this matter a Youth Court action, the applicable statute explains that, if the court grants the State leave to file an Information, the matter is a criminal matter, albeit one that could later transfer to Youth Court. Section 41-5-206, MCA, sets forth the procedure by which the State may file an Information in district court prior to the commencement of formal proceedings in Youth Court. If a district court grants the State leave to file an Information, the court shall, within 30 days after granting such leave, "conduct a hearing to determine whether the matter must be transferred back to the youth court," unless the youth or their counsel waive the hearing. Section 41-5-206(3), MCA. Section 41-5-206(4), MCA, provides, in relevant part, "The filing of an information in district court *terminates the jurisdiction of the youth court* over the youth with respect to the acts alleged in the information." (Emphasis added.) Thus,

once the State filed the Information, the Youth Court no longer had jurisdiction over S.L. with respect to the acts alleged in the Information. S.L.'s case is thus a criminal case now.

¶13 However, an issue remains as to whether S.L.'s substitution motion was timely filed. Section 3-1-804(1)(b), MCA, provides that in a criminal action, a motion for substitution by the defendant must be filed "within 10 calendar days after the defendant's arraignment." It is undisputed that S.L. filed the substitution motion before arraignment. In its response in opposition to S.L.'s petition for writ of supervisory control, the State argues that S.L.'s substitution motion is untimely because it is premature. The State argues that § 3-1-804(1)(b), MCA, contemplates substitution "*after* the defendant's arraignment," and that a motion filed beforehand is premature and void. (Emphasis added.) Thus in S.L.'s case, arraignment—the triggering event for the 10-day substitution period—had not occurred when she filed her substitution motion and her motion was therefore void. *See Lesage v. Twentieth Jud. Dist. Ct.*, 2021 MT 72, ¶ 2, 403 Mont. 476, 483 P.3d 490.

¶14 S.L. acknowledges she filed her substitution motion prior to arraignment, but she argues the State misconstrues the function of the substitution rule, which is to "promote judicial economy and expediency by demanding the prompt substitution of a district court judge when a party requests such removal." *Caye v. Mont. Twentieth Jud. Dist. Ct.*, 2025 MT 246, ¶ 14, 424 Mont. 411, 578 P.3d 628 (citing *Mattson*, ¶ 20). S.L. maintains that under § 3-1-804(1)(b), MCA, arraignment does not open a 10-day window but rather sets a deadline for when the substitution window closes. She acknowledges that *Caye*, ¶ 17, refers to arraignment as the "triggering event for the 10-day deadline to request

substitution," but she argues that considering substitution motions filed prior to arraignment to be timely squares with the purpose of the deadline, which *Caye*, ¶ 18, explains is to ensure that substitution motions are filed and resolved near the outset of a criminal case, before the initially presiding judge is likely to have made substantial rulings.

¶15 The State asserts the District Court erred in concluding S.L.'s motion was timely filed. However, the State argues we should decline supervisory control and allow the District Court's denial to stand because it reached the correct result, albeit for the wrong reason. *In re Est. of Greene*, 2013 MT 174, ¶ 14, 370 Mont. 490, 305 P.3d 52.

¶16 In *Collins*, ¶ 8, we accepted supervisory control and determined that a district court erred in denying a substitution motion as untimely. In that case, Collins failed to appear at the time set for his arraignment. He was later arrested and appeared for arraignment three weeks after the initial arraignment date. *Collins*, ¶ 2. Within 10 days of the latter date, Collins moved to substitute and the court denied his motion as untimely, ruling that he had to have filed his motion within 10 days of the initial arraignment date. *Collins*, ¶¶ 2-3. We rejected the trial court's interpretation of § 3-1-804(1)(b), MCA, explaining:

> The District Court argues that the plain language of § 3-1-804(1)(b), MCA, does not require the defendant's personal appearance at the arraignment and that the ten-day substitution timeline may begin even if the court does not arraign the defendant consistent with § 46-12-201, MCA. . . . We disagree and find that an "arraignment" starting the ten-day substitution timeline of § 3-1-804(1)(b), MCA, must comply with the requirements of Title 46, MCA. The District Court reads § 3-1-804(1)(b), MCA, as simply setting "a definitive moment in the criminal proceeding to trigger the ten-day timeline in which to file a motion for substitution of judge." We agree with the District Court that § 3-1-804(1)(b), MCA, sets a "definitive moment" triggering the ten-day timeline, but find that "definitive moment" to be when

> the defendant is arraigned pursuant to the standard procedure required in all criminal proceedings.

*Collins*, ¶ 6 n.1. In *Mattson*, ¶ 20, we explained, "The [substitution] rule seeks to promote judicial economy and expediency by demanding the prompt substitution of a district court judge when a party requests such removal, without cause." In *Mattson*, we held that a subsequently joined party could not move to substitute a district court judge without cause if the time for the original parties to file a substitution motion under § 3-1-804, MCA, had expired. *Mattson*, ¶ 15. We rejected the appellant's argument that denying a subsequently joined party the right of substitution without cause violated their substantive due process rights. Noting that Article VII, Section 2, of the Montana Constitution, confers upon us the right to fashion a substitution rule, we concluded that the rule was reasonably related to the permissible judicial objective of affording every Montanan a "speedy remedy . . . for every injury" as provided in Article II, Section 16, of the Montana Constitution. *Mattson*, ¶ 20. We concluded that the rule's distinction between the original parties and subsequently joined parties not only had a rational basis but "responsible judicial administration requires doing so." *Mattson*, ¶ 21. We reasoned, "During the time period afforded the original parties, the judge has presided over the case for very little time and, in all likelihood, has not issued a ruling on any substantial matter in the case. Therefore, the probability of duplicating judicial efforts is slight . . . ." *Mattson*, ¶ 22. However, since subsequently joined parties often appear at a much later stage in the proceedings, allowing them "to remove the presiding judge, without cause, after the judge has presided over the case for what could be a substantial period would disrupt the continuity of the litigation,

precipitate delay, cause duplication of effort, and waste time and expense." *Mattson*, ¶ 23. We relied on *Mattson* in *Caye*, concluding that "the right to substitution is intended to be exercised at or near the beginning of litigation because the benefit that may accrue to a party for later substitution is outweighed by the potential judicial inefficiency, wasted time, and expense." *Caye*, ¶ 18.

¶17 *Caye*, *Collins*, and *Mattson* all concerned the question of whether a substitution motion was untimely filed because it was late. In those cases, we were concerned with whether the time had run and, until now, we did not contemplate whether arraignment is a triggering event that opens a 10-day window or whether arraignment is merely the point in time that determines when the time for substitution expires. We conclude that it is the latter. As we explained in *Caye* and *Mattson*, the substitution rule is intended to allow a litigant to remove the presiding judge without cause in the early stages of a case—when, "in all likelihood, [the judge] has not issued a ruling on any substantial matter in the case." *Mattson*, ¶ 22. Contrary to the State's position, the uncertainty of whether this matter will remain in District Court or transfer to Youth Court illustrates why a substitution motion filed prior to arraignment should not be considered premature: the decision whether to transfer the case is undoubtedly a ruling on a "substantial matter," and *Mattson* explains that the substitution rule is intended to allow substitution prior to such ruling.

¶18 Although the State also relies on *Est. of Greene*, its facts are distinguishable. In that case, the Personal Representative (PR) of the Estate of Lilliane M. Greene pursued informal probate of Greene's will, and the PR issued notice of such by mail to Greene's heirs and

9

devisees, including Greene's son William. *Est. of Greene*, ¶ 3. Several months later, an attorney appeared on William's behalf and moved for substitution. Nine days after that, William's counsel filed additional pleadings, including a Petition for Supervised Administration. *Est. of Greene*, ¶ 4. On appeal, we determined that William's substitution motion was untimely and therefore void because it was prematurely filed while the will was under informal probate. *Est. of Greene*, ¶ 13. Since the informal probate was not under the supervision of a court, it was not a "civil action," and § 3-1-804, MCA, did not apply until the matter was filed in district court. *Est. of Greene*, ¶ 13. In the present case, there is no dispute that S.L.'s case was before the District Court at the time she moved for substitution because that motion occurred after the State filed its Information.

¶19 Since S.L.'s arraignment has not yet occurred, her substitution motion is timely filed. Because the District Court denied a timely and effective motion for substitution in a criminal case, the criteria for supervisory control under M. R. App. P. 14(3)(c) are satisfied. Therefore, the District Court erred in improperly denying S.L.'s request.

¶20 As noted above, S.L. further argues that we should vacate the District Court's Order for Evaluation because it was filed in this case the day after S.L. moved to substitute Judge Larson. Section 3-1-804(5), MCA, provides that, except for some routine matters not applicable here, a substituted district judge does not have the power to decide legal issues in a case after a timely substitution motion has been filed. Here, however, the District Court issued its ruling several days prior to S.L.'s substitution motion, although it was initially filed under an incorrect cause number. The court thus issued the order prior to the

10

filing of the substitution motion and did not exceed its authority in correcting a clerical error.

¶21 IT IS THEREFORE ORDERED that S.L.'s Petition for Writ of Supervisory Control is GRANTED. The District Court's order denying S.L.'s substitution motion is set aside, and this matter is remanded for further proceedings consistent herewith.

The Clerk is directed to provide immediate notice of this Opinion and Order to counsel for Petitioner, all counsel of record in the Fourth Judicial District Court, Missoula County, Cause No. DC-25-544, and the Honorable John W. Larson, presiding.

DATED this 6th day of January, 2026.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

11